# COLLECTIVE BARGAINING AGREEMENT

BETWEEN

# VIP CONCERIGE / GREATER SHIELD / GROUND SUPPORT – 80 MAIDEN LANE

AND

# LOCAL 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO



**APRIL 1, 2020 THROUGH APRIL 31, 2023**

# Contents

ARTICLE I - RECOGNITION ..................................................................................................................... 1
ARTICLE II - UNION SECURITY ............................................................................................................... 1
ARTICLE III - HOURS OF WORK AND OVERTIME .............................................................................. 2
ARTICLE IV – NO PYRAMIDING ............................................................................................................. 2
ARTICLE V - HOLIDAYS ............................................................................................................................ 3
ARTICLE VI - VACATION ........................................................................................................................... 3
ARTICLE VII – WAGE INCREASES .......................................................................................................... 4
ARTICLE VIII – PERSONAL DAYS ........................................................................................................... 5
ARTICLE IX – SICK LEAVE ....................................................................................................................... 5
ARTICLE X - JURY DUTY .......................................................................................................................... 5
ARTICLE XI - DEATH IN FAMILY ............................................................................................................ 5
ARTICLE XII – GUARANTEED WORK .................................................................................................... 5
ARTICLE XIII - LAY-OFF & SENIORITY ................................................................................................. 5
ARTICLE XIV – HEALTH AND WELFARE FUND .................................................................................. 6
ARTICLE XV - ANNUITY FUND ............................................................................................................... 9
ARTICLE XVI - DISCHARGE/SUSPENSION .......................................................................................... 10
ARTICLE XVII - ARBITRATION .............................................................................................................. 10
ARTICLE XVIII - SHOP CHAIRMAN AND COMMITTEE .................................................................... 11
ARTICLE XIX - CONTRACTING OF WORK .......................................................................................... 11
ARTICLE XX - DISCRIMINATION .......................................................................................................... 11
ARTICLE XXI - MODIFICATION OF AGREEMENT ............................................................................. 12
ARTICLE XXII - LEAVE OF ABSENCE .................................................................................................. 12
ARTICLE XXIII – PAID FAMILY AND MEDICAL LEAVES ................................................................ 12
ARTICLE XXIV - MILITARY LEAVE ...................................................................................................... 12
ARTICLE XXV – REPORTING PAY ......................................................................................................... 13
ARTICLE XXVI - VISITATION ................................................................................................................. 13
ARTICLE XXVII - REDUCTION OF WAGE RATES OR BENEFITS ................................................... 13
ARTICLE XXVIII - CHECK-OFF .............................................................................................................. 13
ARTICLE XXIX - REST PERIODS AND WASH-UP PERIOD ............................................................... 14
ARTICLE XXX - BULLETIN BOARDS .................................................................................................... 14
ARTICLE XXXI - SAFETY PROVISIONS & PAY FOR TIME LOST .................................................... 14
ARTICLE XXXII - UNIFORMS AND TOOLS ......................................................................................... 14
ARTICLE XXXIII- WORK STOPPAGE .................................................................................................... 14
ARTICLE XXXIV - SEPARABILITY AND SAVINGS CLAUSE ........................................................... 14
ARTICLE XXXV - PICKET LINES ........................................................................................................... 15
ARTICLE XXXVI - EXAMINATION OF RECORDS .............................................................................. 15
ARTICLE XXXXVII - SUCCESSORS AND ASSIGNS ........................................................................... 15
ARTICLE XXXVIII - NEUTRALITY CLAUSE ....................................................................................... 16
ARTICLE IXL - EXPIRATION OF AGREEMENT .................................................................................. 17
ARTICLE XL - TERM OF AGREEMENT ................................................................................................. 18

THIS AGREEMENT made and entered into as of the 1st day of April, 2020, by and between Local 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO, located at 400 Garden City Plaza, Garden City, NY 11530, hereinafter referred to as the "Union", and Ground Support Services located at 331 Rutledge Street, Brooklyn New York, 11205, hereinafter referred to as the "Employer".

WITNESSETH:

NOW THEREFORE, it is mutually agreed as follows:

ARTICLE I - RECOGNITION

The Employer recognizes and acknowledges the Union as the sole and exclusive collective bargaining agency for all of its Building maintenance employees, with respect to wages, hours and conditions of employment, excluding executives, office clericals, supervisors and guards as defined in the Labor Management Relations Act as amended, and agrees to deal collectively only with this Union for and on behalf of such employees.

ARTICLE II - UNION SECURITY

Section 1.   All employees covered by this Agreement, who are members of the Union, shall maintain membership in good standing in the Union as a condition of continued employment.

Section 2.   All employees covered by this Agreement, who are not members of the Union, shall be come members of the Union in good standing on the thirty-first (31st) day from: (a) the date they first commenced work, (b) the date of execution of this Agreement or (c) the effective date of this Agreement, whichever is later.

Section 3.   For the purpose of this Article, an employee shall be considered a member of the Union in good standing if he/she tenders the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. The Union shall supply the Employer with dues check-off authorization forms and the Employer shall provide all current and future employees with said forms and request employees to sign said forms as allowed by applicable law.

Section 4.   An employee who has failed to acquire or maintain membership in the Union in good standing shall be discharged within fourteen (14) calendar

Page - 1

days following receipt of a written demand from the Union to the Employer requesting his discharge.

Section 5. When new help is required, the Employer shall immediately notify the Union, and the Union shall have forty-eight (48) hours, (exclusive of an intervening Saturday, Sunday or Holiday) to recommend the help required. If within such forty-eight (48) hours the Union fails to recommend satisfactory person, then, at the expiration of such forty-eight (48) hours, the Employer may seek its help from the open market.

Section 6. New employees shall be deemed temporary and employed on a probationary basis for a period of four (4) weeks. Thereafter, they shall be deemed regular employees.

Section 7. The Employer shall be required to begin monthly dues remittance for all employees who have completed their probationary period by the 10th day of any month for which it is due.

## ARTICLE III - HOURS OF WORK AND OVERTIME

A regular week's work shall consist of forty (40) hours, divided into five (5) days of eight (8) hours each, performed between the hours of 7:00 AM. and 6:00 PM. from Monday through Sunday of each week. Time and one-half shall be paid for all hours in excess of forty (40) hours in one day after hours in one week, and for all work done on Saturday. Double time shall be paid for work on Sunday and double time plus holiday pay shall be paid for work on the paid holidays hereinafter listed. No employees shall be required to work overtime unless the Employer first secures the permission of the Union. Wages shall be paid once a week for all work done prior to the day of payment of weekly wages. Payment of wages shall be on Company time. Should the employer establish shifts other than the regular day shift hereinafter set forth, and then a ten percent (10%) differential shall be paid to workers on the afternoon shift or night shift. Overtime shall not be pyramided; that is all hours worked for which premium time is required to be paid under this agreement shall be excluded from the computation of hours worked for the purposes of determining whether overtime was worked during that week or the amount thereof.

## ARTICLE IV – NO PYRAMIDING

All vacation, holiday, sick day and bereavement pay unless otherwise provided for in this agreement shall be paid at the employees regular straight time rate of pay. There shall be no pyramiding. Whenever hours worked are compensable at greater than the employee's regular straight time rate under more than one provision of this Agreement, the hours shall be compensated for at the higher rate, but in no event shall they be compensated for at more than one rate.

## ARTICLE V - HOLIDAYS

The Employer shall allow all employees the following holidays with pay, regardless of the day of the week on which the holiday falls. In the event that the holiday falls on a Saturday, it shall be observed on Friday, and in the event that the holiday falls on a Sunday, it shall be observed on Monday:

New Year's Day
MLK Jr. Day
Memorial Day
Fourth of July

Labor Day
Thanksgiving Day
Christmas Day

Should any of the aforementioned holidays fall within the thirty (30) day probationary period referred to herein, the employees shall receive pay for such holiday after the probationary period has been completely worked. All laid-off employees shall receive holiday pay for the aforementioned holidays, if they have worked at any time within thirty (30) days before or after the holidays.

## ARTICLE VI - VACATION

Section 1.  The Employer shall grant all of its employees, during each contract year, paid vacation as follows:

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
|---|---|
| 12 months | 1 week |
| 36 months | 2 weeks |
| 84 months | 3 weeks |

Section 2.  Length of employment shall be calculated based on the employees' time worked in the building.

Section 3.  Vacation money shall be paid immediately before the employees leave for their vacation period.

Section 4.  The vacation period shall be designated by the Employer at least four (4) weeks prior to the time it commences.

Section 5.  Vacations shall be picked in the order of seniority.

Section 6.  Employees laid-off, discharged or quitting prior to the vacation period shall be paid their vacation monies on a pro-rata basis at the time such employment is terminated.

Section 7.    Should the laid-off employees be recalled, then, at the time of vacation period they shall receive the balance of vacation pay due to them. Lay-off time up to a maximum of six (6) months in any calendar year, shall be credited as time worked for vacation purposes.

Section 8.    Employees who have a leave of absence in employment for up to a maximum of six (6) months in any calendar year due to sick disability or workers compensation (an employee must be receiving benefits for sick disability or workers compensation) shall be credited as time worked for vacation purposes.

Section 9.    In the event of the death of any employee covered by this agreement, vacation monies due, on a pro-rata basis, shall be paid to the designated beneficiary.

Section 10.   Holidays falling during the vacation period shall be paid for, in addition to the employee's regular pay for the length of earned vacation.

Section 11.   Employees must take their vacations unless otherwise agreed upon by the Employer and Union.

## ARTICLE VII – WAGE INCREASES

Section 1.    Effective at the signing of this agreement and thereon all employees shall receive semi-annual wage increases for each year of this agreement.

Section 2.    It is agreed that the Employer may require an employee of one classification to do work which may fall within the duties of another classification, should the second classification be a higher one, the employee shall receive the rate therefore, and unless temporarily assigned in said classification after completion of two (2) weeks service in the higher classification. If the parties cannot agree thereon, the matter shall be arbitrated as hereinafter provided. The employee in the meantime shall perform the work assigned to him.

| Effective Date | Wage Increase |
| --- | --- |
| 1. January 1, 2021 | $.50 per hour |
| 2. January 1, 2022 | $.50 per hour |
| 3. January 1, 2023 | $.50 per hour |

Section 3.    In the event there is a change in the Federal or State minimum wage, then any employee employed thirty (30) days or ;more shall be at least twenty-five (25¢) per hour above any minimum wage established by the State or Federal Government.

## ARTICLE VIII – PERSONAL DAYS

All employees shall be entitled to four (4) days of personal leave during each contract year. All unused personal leave shall be paid to the employee, at regular pay, two (2) weeks before the expiration of the contract year

## ARTICLE IX – SICK LEAVE

All employees shall be entitled to five (5) days of sick leave during each contract year. All unused sick leave shall be paid to the employee, at regular pay, two (2) weeks before the expiration of the contract year. This provision satisfies or exceeds the provisions of the New York City Earned Sick Leave Act.

## ARTICLE X - JURY DUTY

Employees who are required to serve on a jury shall receive from the Employer, as wages, the difference between their basic weekly wage and that which the employee received from having served on jury duty.

## ARTICLE XI - DEATH IN FAMILY

Employees who have a death in their immediate family shall receive three (3) days leave of absence with pay. Immediate family shall mean, Spouse, Son, Daughter, Father, Mother, Brother, Sister or Grandchild.

## ARTICLE XII – GUARANTEED WORK

No employee shall receive less than twenty-four (24) hours of work in each week in which he is required to report or eight (8) hours of work on each day on which he is required to report for work. Should any employees work less than twenty-four (24) hours in any week or less than eight (8) hours in any day, the Employer shall pay said employees a sum equal to the amount they would have received had they worked the twenty-four (24) hour period or eight (8) hour period. Minimum guaranteed work for Saturdays shall be eight (8) hours. There shall be at least forty-eight (48) hours' notice of lay-off which shall be on the seniority basis hereinafter set forth.

## ARTICLE XIII - LAY-OFF & SENIORITY

Lay-off shall be on the basis of seniority. The Employer shall send to the Union a list of names of the employees laid-off promptly after the lay-off takes place.

A. Whenever a reduction in the work force is necessary, the Employer shall give two (2) days' notice of such lay-off to the regular and temporary employees, excluding the week-end, and said notice may be given no later than the end of the work day on Wednesday.

B. The Employer will prepare and submit to the Union a seniority list based upon the total length of service in the building. Seniority shall prevail, and the principle thereof shall be applied to lay-offs, rehiring and wherever else applicable.

C. Any employee who has, or may quit or has been or may be discharged for cause, shall lose all previously accumulated seniority.

D. In computing the total length of service time lost as a result of any of the following shall be considered as time served:

   1. An interval of unemployment resulting from any single lay-off or leave of absence, wherein the employee is absent from work for a continuous period.

   2. Any such employee who does not report to work within twenty-four (24) hours, not including Saturdays or Sundays, after date required to report, shall forfeit employment in that particular rehiring, but if within a period of ten (10) days after notice is given, he shall be given the same consideration at the time of the next rehiring.

## ARTICLE XIV – HEALTH AND WELFARE FUND

Due to the Obama Healthcare Reform, the Fund must apply for and receive a waiver each year to continue the Plan's existing level of benefits, and because of that uncertainty the contribution rate will be adjusted every January thereafter each year of this agreement upon notice to the Employer.

The employer will contribute to the I.B.O.T.U. Health & Welfare Fund ("Welfare Fund") for Plan B or any successor plan, in advance for all non-probationary employees on the payroll of the Employer any day of that month, to be used as a Welfare Fund. The Employer agrees to pay the sum of

| Effective Date | Single |
|---|---|
| January 1, 2020 | $ 200.00 |
| January 1, 2021 | TBD |
| January 1, 2022 | TBD |
| January 1, 2023 | TBD |

The Employer shall also be required to make such payment to any other insurance provider as may be designed by the Union and the Fund in writing, in place of the aforementioned Welfare Fund.

Employees may be eligible for medical coverage after three (3) months of employer continuous contributions.

Section 1.   The Employer shall be required to begin contributions for new employees who have completed their probationary period by the 10th day of any month.

Section 2.   The Employer shall also contribute to the Welfare Fund, or to any successor provider who may be designed by the UNION and the Fund, for a period of six (6) months, for any employee who is out on Workers' Compensation, sick disability, vacation or leave of absence.

Section 3.   The Welfare Fund has been created and maintained pursuant to an Agreement and Declaration of Trust ("Trust"). Said Trust is hereby made a part of this Agreement with the same force and effect as if fully incorporated herein. The Employer and Union hereby agree that upon the execution of this Agreement they shall be deemed parties to the Trust.

Section 4.   Failure of the Employer to make prompt contributions, when due, to the Welfare Fund shall authorize the Welfare Fund to take immediate action, including requesting the UNION to strike, against the Employer. In such event, the UNION shall have the right to strike without recourse to the arbitration procedure, and any other provisions of this collective bargaining agreement.

Section 5.   In the event, the UNION and the Fund decides to discontinue the provisions of hospital/Welfare benefits to eligible bargaining unit employees and/or their eligible dependents, it shall notify the employer in writing and thereafter the Employer shall not be required to make any further contributions for such employees for hospital/medical benefits, until such time as the Union and the Fund shall inform the Employer in writing, of the name of a substitute hospital/medical service provider, to whom the Employer contributions are to be made.

Section 6.   If the Employer is ten (10) or more days delinquent in its obligation to make contributions under this Article, the Union may serve notice of delinquency upon the Employer via certified mail stating that all coverage and benefits for the Employer's employees under the (I.B.O.T.U. Health and Welfare Fund) will be suspended unless the delinquency is cured within ten (10) days from the date of notice. If the delinquency is not cured within the time set forth in the notice, the Union may direct the I.B.O.T.U. Health and Welfare Fund to suspend benefits and coverage for the Employer's employees. In the case of a benefit suspension, the Employer is fully liable for equivalent coverage for all of its employees and in the event of any loss sustained by the employee of his dependents because of the suspension of benefits and coverage, the Employer shall

directly compensate the employee for any loss. The rights granted under this section are accumulative and do not relieve the Employer of its obligation to make contributions or waive any other rights of the Union or the I.B.O.T.U. Health and Welfare Fund.

Section 7.  The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Welfare Fund.

Section 8.  The Employer further agrees to notify in writing, the I.B.O.T.U. Health & Welfare Fund of all new employees, covered by this Agreement, employed for a period of thirty-one (31) days or more, and submits payments to the I.B.O.T.U. Health & Welfare Fund, as described herein on their behalf.

Section 9.  The Employer agrees that it shall be incumbent upon him no later than forty-eight (48) hours, to advise the UNION in writing of any change of status of any employee in his employ, who is covered by the I.B.O.T.U. Health & Welfare Fund. In the event that the Employer fails to notify the UNION and the Fund of any lay-off, discharge or termination, for any reason, of the aforesaid employee, the Employer shall be liable to the I.B.O.T.U. Health & Welfare Fund for all regular payments until such notice is rendered in writing by the Employer and acknowledged by the UNION.

Section 10. The Employer is required promptly to notify the Fund in writing of terminations if it fails to do so it shall be liable for any benefits wrongly paid on behalf of terminated employee as a result of such failure to notify.

Section 11. When an Employer is two (2) or more months in arrears in contributions into the Welfare Fund, the Employer shall make those contributions, and in addition, the Employer shall deposit a sum equal to six (6) months of contributions (Based on the number of employees for whom contributions were due in the month preceding the demand for that deposit) into the Welfare Fund Savings Account. The sum shall remain on deposit during the lifetime of this agreement. The interest thereon shall accrue to the Welfare Fund and the principal shall be applied against any further Employer delinquency that might occur during the term of agreement. If any further delinquency does arise during the term of this agreement, the Employer shall be required to satisfy it and keep six (6) months of contributions on deposit of said funds shall be made within ten (10) days after notification by the Welfare Fund.

Section 12. The contributions amount set forth may not be increased without prior notice of same. In the event the Fund determines that the amount contributed by the Employer is insufficient to adequately maintain the current level of medical benefits that the plan is providing to a participant and their dependents, the Fund shall notify the Employer of the amount of the increase sought. The employer agrees to contribute the new amount including the increase sought on or after the first day of the month for

which it is due after receiving said notice. The same procedure shall follow for any and all additional increases that the Fund determines are required during the term of the Agreement. . In the event of a billing error in which the month(s) billed for was incorrect, for that period, the Fund shall forward to the Employer a corrected statement and the Employer will contribute the adjusted amount for that period as per the Collective Bargaining Agreement.

## ARTICLE XV - ANNUITY FUND

Section 1.  The Employer will pay to Local 713 Annuity Fund, Twenty-five ($25.00) dollars per month, for all employees employed at the premises as of February 15, 2020 new employees hired after February 15, 2020 shall be subject to a one year waiting period, the employer shall contribute Twenty-five ($25) dollars per month upon completion of the one year waiting period.

The Employer shall be required to begin contributions into the Annuity Fund for new employees completing their probationary period by the 20th day of any month.

The Employer shall contribute into the Annuity Fund for a period of six (6) months for any employee who is out on Worker's Compensation or Sick Disability.

Section 2.  The Annuity Fund has been created and maintained pursuant to an Agreement and Declaration of Trust ("Trust"). Said Trust is hereby made a part of this Agreement with the same force and effect as if fully incorporated herein. The Employer and Union hereby agree that upon the execution of this Agreement they shall be deemed parties to the Trust.

Section 3.  Failure of the Employer to make prompt contributions, when due, to the Annuity Fund shall authorize the Union to take immediate action, including a strike, against the Employer, without recourse to the arbitration procedure, and notwithstanding any other provisions of this Agreement.

Section 4.  When an Employer is two (2) months or more in arrears in contributions into the Annuity Fund, the Employer shall make those contributions and, in addition, the Employer shall deposit a sum equal to six (6) months of contributions (based upon the number of employees for who contributions were due in the month preceding the demand for that deposit) into an Annuity Fund savings account. That sum shall remain on deposit during the lifetime of this Agreement. The interest thereon shall accrue to the Annuity Fund and the principal shall be applied against any further Employer delinquency that might occur during the term of this Agreement. If any further delinquency does arise, during this Agreement, the Employer shall be required to satisfy it and keep six (6) months of

contributions on deposit. The deposit of said funds shall be made within ten (10) days after notification by the Annuity Fund.

Section 5. The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Annuity Fund.

## ARTICLE XVI - DISCHARGE/SUSPENSION

Section 1. The Company shall not discharge nor suspend any employee without just cause, and the written notice of discharge or suspension must set forth the specific reason (s) for such action.

Section 2. Prior to suspension or discharge, the Employer shall give at least three (3) warning notices of the specific complaint against the affected employee in writing and copies to the Union and Shop Steward, except that no warning notice need be given any employee before he is discharged or suspended for any of the causes listed under Causes for Immediate Discharge.

Section 3. Causes for Immediate Discharge: The causes for immediate discharge of an employee shall be for the theft of money, goods, or merchandise of the Employer or another employee during working hours, theft of time, use of narcotics, drunkenness, possession of any type of weapon, assault on Employer or his representative or another employee during working hours, calling an unauthorized strike or walkout, or proven wrecklessness resulting in a serious accident while on duty.

Section 4. Except for the discharge of an employee for a reason set forth in Section 3 of this Article, or where in the Union's sole judgment it is in the best interest of those concerned that the cause for discharge be submitted to arbitration and the employee shall not be continued in employment pending the arbitration award.

## ARTICLE XVII - ARBITRATION

Section 1. All complaints, disputes and grievances arising between the parties to this agreement, involving questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation hereto directly or indirectly - shall be presented by the parties asserting a grievance to the other party the grievance shall be reduced to writing by the aggrieved party in a timely manner. Both parties shall thereupon attempt to adjust the dispute, and if no adjustment can be arrived at within forty-eight (48) hours, the matter shall be submitted for arbitration to a mutually agreed upon independent arbitrator. If one is unavailable, then the New York State Board of Mediation, one of whose staff members shall arbitrate

same, upon request of either party or a mutually agreed upon Arbitrator, picked from that panel.

Section 2.   Where a dispute is submitted for arbitration as set forth herein, such action shall be considered a final and binding submission to arbitration by both parties hereto. Thereafter, should either of the parties fail to attend the hearing set forth by the Arbitrator after due notice thereof, the Arbitrator shall be empowered to proceed with such hearings in the absence of the said party, and shall be empowered to make a final decision and award. The decision of the Arbitrator shall be made in writing and shall be final and binding upon both parties. As long as the Employer is not in default in complying with the decision of the Arbitrator, the Union shall not engage in any strike, picketing, boycott or walkout. As long as the Union is not in default in complying with the decision of the Arbitrator, the Employer shall not engage in any lockout. Cost of the arbitration shall be borne equally by both parties.

## ARTICLE XVIII - SHOP CHAIRMAN AND COMMITTEE

The Union shall have the right to establish a Shop Committee and Shop Chairman in the facility covered by this Agreement. Such Chairman shall have the right to take up with a representative of the Employer all grievances arising out of this Agreement. Such Chairman must be in the facility at any time when employees are working; the Shop Chairman and Shop Committee, consisting of not more than __ employees, shall have super seniority.

## ARTICLE XIX - CONTRACTING OF WORK

All work which can be done at the Employer's facility will be done there and not contracted out or performed at some other establishment. Any work which has heretofore been contracted out or purchased elsewhere may continue to be so contracted or purchased.

## ARTICLE XX - DISCRIMINATION

Section 1.   Neither the Employer nor the Union will discriminate against or in favor of any employee or applicant for employment because of race, color; creed, national origin, citizenship status, sex, age, disability or marital status, except as may be permitted by law.

Section 2.   Nothing in this Agreement shall prevent the Employer from taking any action necessary to comply with the Americans with Disabilities Act. Reasonable accommodations made by the Employer for a particular employee shall be a non-precedential nature and shall not be evidence of disparate treatment in any grievance or arbitration.

## ARTICLE XXI - MODIFICATION OF AGREEMENT

Neither the Employer nor any employee has the right to modify or waive any of the provisions of this Agreement. The Employer will not enter into any individual agreements or arrangements with any of its employees covered by this agreement.

## ARTICLE XXII - LEAVE OF ABSENCE

Section 1.  Any employee desiring a leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for six (6) months and may be extended for like periods. Written permission for extension must be secured from both the Union and the Employer. During the period of absence, the employee shall not engage in gainful employment in the same industry in classifications covered by this Agreement. Failure to comply with this provision shall result in the complete loss of seniority rights for the employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights.

Section 2.  a.  An employee who is a candidate for Union election shall be granted a two (2) weeks leave of absence.

b.  Any employee who is designated by the Union to work for the Union on a full time basis shall be granted a leave of absence, with no loss of seniority, for the duration of his full time employment provided he reports back to work to the Employer within ninety (90) days after his employment with the Union is terminated.

## ARTICLE XXIII – PAID FAMILY AND MEDICAL LEAVES

Employees shall be eligible for Paid Family and Medical Leave in accordance with current applicable State and Federal Law.

## ARTICLE XXIV - MILITARY LEAVE

All military leaves shall be as provided by the Military Act or other legislation governing same, except that in any event, employees shall be restored to their former positions at the prevailing rate of pay, on the basis of seniority, the time spent in military service considered as time actually employed by the Employer. Reinstatement, however, must be applied for within ninety (90) days after receiving an honorable discharge and the applicant must be physically able to do the work. Employees who are members of the National Guard and who are required to

attend two (2) weeks training period in camp each year shall be paid their regular weekly wages during the training period.

## ARTICLE XXV – REPORTING PAY

If an Employee reporting for the usual day's work shift is, for any reason other than discipline, prevented from working, or is laid off, without previous notice not later than the end of that Employee's shift on the previous work day, the Employee shall receive his or her pay for four (4) hours.

## ARTICLE XXVI - VISITATION

It is agreed by the Employer that the Union Representation shall have access to the employer's facility during working hours, to ascertain whether the agreement is being properly observed, providing there is a minimum interruption of the normal course of the operation in the facility.

## ARTICLE XXVII - REDUCTION OF WAGE RATES OR BENEFITS

Nothing in any provisions of this agreement shall be so construed, anything to the contrary notwithstanding, as to affect a reduction in the entitled wage rate of any worker, any entitled conditions and/or benefits formerly or presently received prior to the execution of this CBA or to increase the number of hours per week which the worker shall be compelled to work in order to earn his present weekly wage.

## ARTICLE XXVIII - CHECK-OFF

The Employer agrees that he will deduct from the wages of employees, once a month, out of the first salary payable in each month, the amount of dues, initiation fees and regularly authorized assessments the employees are required to pay the Union for the month.

The said deduction shall be made on the first day of each and every month. All monies, so deducted, shall be remitted to the Union, together with a list of the employees whose dues and initiation fees have been deducted, by the tenth (10th) day and no later than the fifteenth (15th) day of the current month.

Once a month, within one week from the date of such deduction, the Employer will deliver the money billed and deducted to a duly authorized representative designated by the Union for the purpose. The Union agrees that it will file with the Employer written authorization executed by each employee authorizing such deductions. In the event the Employer is delinquent in making such payments he shall suffer the same penalties for non-payment as are provided in Article XIV and XV.

## ARTICLE XXIX - REST PERIODS AND WASH-UP PERIOD

Each employee shall be allowed at least two (2) rest periods per working day, divided as follows: fifteen (15) minutes each morning and fifteen (15) minutes each afternoon. The Employer shall also allow all employees a ten (10) minute wash-up period prior to the completion of the work day.

## ARTICLE XXX - BULLETIN BOARDS

The Employer agrees to post and allow the Union the use of a sufficient number of bulletin boards in the shop to be used for Union notices.

## ARTICLE XXXI - SAFETY PROVISIONS & PAY FOR TIME LOST

The Employer will make reasonable provisions for the safety and health of its employees, and shall comply with all Federal, State and Municipal requirements for safeguards and cleanliness. Should an employee be injured at the plant he shall be paid for his entire day. Should he lose time during the day thereafter for treatment for injuries suffered while employed, he shall be paid for time lost.

## ARTICLE XXXII - UNIFORMS AND TOOLS

The Employer agrees that where it requires its employees to wear uniforms, as may be necessary from time to time without any charge or costs to employees. The Employer also agrees to furnish tools and equipment required for any work to be performed.

## ARTICLE XXXIII- WORK STOPPAGE

Where an unauthorized work stoppage or strike occurs, the Union will make immediate efforts to get the employees to return to their respective jobs and shall request the employees to cease any action which may affect production. The Employer agrees, in consideration of the performance by the Union of the aforesaid undertakings, to absolve the Union, its officers, agents or members from liability by suit for damages for breach of contract of any kind or character whatsoever. It is distinctly agreed and understood that the Union shall not be held liable for any unauthorized or outlaw strikes, or the individual acts or actions of any employee or employees.

## ARTICLE XXXIV - SEPARABILITY AND SAVINGS CLAUSE

Should any part of this agreement or any portion therein contained be rendered or declared illegal, legally invalid or unenforceable by a court of competent jurisdiction, or by the decision of any authorized governmental agency, such invalidation of such part or

portion of this agreement shall not invalidate the remaining portions thereof. In the event of such occurrence, the parties agree to meet immediately, and if possible, to negotiate substitute provisions for such parts or portions rendered or declared illegal or invalid. Should the parties be unable to agree on substitute provisions, the matter shall be referred to arbitration as herein able provided. The remaining parts and provisions of this agreement shall remain in full force and effect.

## ARTICLE XXXV - PICKET LINES

It shall not be a violation of this agreement nor grounds for discipline discharge or replacement for employees covered hereunder to refuse to cross a picket line authorized by a Labor Union.

## ARTICLE XXXVI - EXAMINATION OF RECORDS

The Union shall have the right during reasonable business hours to examine the payroll and records of the Employer to determine the wages and hours worked of employees.

## ARTICLE XXXXVII - SUCCESSORS AND ASSIGNS

Section 1. This agreement shall be binding upon the parties hereto, their successors, administrators, executors, and assigns and shall survive a change of name, of location or place of business or re-organization. In the event the entire operation or any part thereof is sold, leased, transferred or taken over by the sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this agreement for the life thereof.

It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this agreement. The Employer shall give notice to the existence of this agreement to any purchaser, transferee, assignee or lessee of the operation of this agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than thirty (30) days prior to sale.

Section 2. The Employer shall not have the right to assign this agreement or in any other manner to transfer the rights and obligations thereof to any other party, unless and until the purchaser, transferee, assignee or lessee shall first have assumed and accepted, in writing, all the terms and conditions of this agreement. Employees working under this agreement shall at all times be entitled, acting through the Union as their representative, to hold the Employer directly responsible for the full performance of all terms and conditions of this agreement.

## ARTICLE XXXVIII - NEUTRALITY CLAUSE

1. The parties mutually recognize that national labor law guarantees employees the right to form or select any labor organization to act as their exclusive bargaining representative for the purpose of collective bargaining with their Employer, or to refrain from such activity.

2. The Employer will take an approach of strict neutrality with regard to unionization of the Employees and will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

3. The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

4. Whenever during the term of this Agreement the Employer finds it necessary to hire new Employees for vacancies in job classifications covered by this Agreement at its facility, the Employer shall notify the Union to request applicants for such vacancies. When requesting applicants, the Employer, upon request, will state the qualification applicants are expected to possess. The Union may furnish applicants for the job vacancies specified by the Employer. The Union's selection of applicants for referral shall be on a non-discriminatory basis and shall not be based upon or in any way affected by membership in the Union or the Union's bylaws, rules, regulations, constitutional provision, or any other aspects or obligations of Union membership policies or requirements, or upon personal characteristics of an applicant where discrimination based upon such characteristics is prohibited by law. The Employer agrees that any interest demonstrated by an applicant in joining the Union shall not constitute grounds for discriminatory or disparate treatment nor adversely impact the applicant's ability to be hired by the Employer. The Employer shall be the sole judge of an applicant's suitability, competence and qualification to perform the work of any job filled.

5. The Union may provide the Employer with written notice of its intent to organize Employees covered by this Agreement. If such notice is served, the Employer shall then provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in the Employer locker rooms and public areas of the facility during Employees' non-working times (before work, after work, and during meals and breaks) and/or during other periods and locations as the parties may mutually agree upon.

6. Within ten (10) days following the Employer's receipt of written notice of intent to organize Employees pursuant to Paragraph 5, the Employer will furnish the Union with a complete list of such Employees, including both regular full-time and regular part-time Employees, showing their job classification and departments. Within two (2) weeks thereafter, the Employer will furnish a second list of such Employees to the Union, which includes the home addresses. Thereafter, on a monthly basis, the Employer will provide to the Union updated lists which include the Employees' full name, department, address and classification. Provided further that in either case no Employees' home address will be provided to the Union under this paragraph if such Employee has objected

in writing, without Employer solicitation or advice, to giving such information to the Union.

7. The Union may request recognition, as the exclusive collective bargaining agent for the Employees set forth in the unit. An Arbitrator, or another person mutually agreed upon by the Employer and the Union, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of Employees. If that review establishes that a majority of Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Employer will recognize the Union as such representative of such Employees. The Employer will not file, or cause to be filed, a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided in this Agreement.

8. The Employees subject to the card check procedure established by this Agreement, those whose cards count for the purposes of determining the Union's majority status, shall consist of all regular full-time and regular part-time Employees in the classifications described.

9. If the Union is recognized as the sole exclusive collective bargaining representatives as provided in paragraph 7, negotiations for a collective bargaining agreement will be commenced immediately. The Employer agrees to bargain in good faith in an effort to reach an agreement with the Union.

## ARTICLE IXL - EXPIRATION OF AGREEMENT

This agreement shall expire at 12:01 a.m. on the day of 31st day of March, 2023. It shall be automatically renewed from year to year thereafter, unless modified or terminated by either party giving to the other party not less than sixty (60) days written notice, by registered mail, prior to the next termination date, of its desire to modify or terminate this agreement. Should said sixty (60) days' notice be given, joint conferences between the parties shall commence at least thirty (30) days before the termination date, for negotiation purposes.

## ARTICLE XL - TERM OF AGREEMENT

This agreement shall be a Three (3) year agreement and shall go into force and effect on April 1, 2023, except that the Union shall reserve the right to re-negotiate for Wages, Hours, Welfare, Annuity, Holidays, Vacation, Sick Leave and better working conditions at the end of each year. In the event that the parties fail to agree, the matter shall be submitted to arbitration as herein set forth and the award of the Arbitrator shall in no way constitute a breach of this agreement which shall remain in full force and effect until the date set forth herein.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by duly authorized officers and have hereunto set their hands and seals the day and year first above written.

GROUND SUPPORT SERVICES

BY: _____

LOCAL 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO

BY: _____