# COLLECTIVE BARGAINING AGREEMENT
## BETWEEN
## LOCAL 713, INTERNATIONAL BROTHERHOOD OF TRADE UNIONS, U.M.D. I.L.A., A.F.L.-C.I.O.

### UNION

### AND

### GROUND SUPPORT SERVICES

### EMPLOYER

September 1, 2019 THROUGH August 31, 2022

PREMISES ADDRESS:

264 Webster Avenue, Brooklyn, New York

THIS AGREEMENT made and entered into as of this 1st day of September, 2019,

by and between Local 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO located at 400 Garden

City Plaza, Garden City, NY 11530, hereinafter referred to as the "Union", and

GROUND SUPPORT SERVICES located at 331 Rutledge Street, Brooklyn, New York

hereinafter referred to as the "Employer".

WITNESSETH:

NOW THEREFORE, it is mutually agreed as follows:

## ARTICLE I - RECOGNITION

The Employer recognizes and acknowledges the Union as the sole and exclusive collective bargaining agency for all of full time and regular part-time Doormen, Concierge, Porters, Unarmed Security Guards and Parking Garage Attendants employed by the Employer 264 Webster Avenue, Brooklyn, New York, with respect to wages, hours and conditions of employment, excluding executives, office clericals, supervisors and guards as defined in the Labor Management Relations Act as amended, and agrees to deal collectively only with this Union for and on behalf of such Employees.

## ARTICLE II - UNION SECURITY

Section 1.   All Employees covered by this Agreement, who are members of the Union, shall maintain membership in good standing in the Union as a condition of continued employment.

Section 2.   All Employees covered by this Agreement, who are not members of the Union, shall be come members of the Union in good standing on the thirty-first (31st) day from:   (a) the date they first commenced work, (b) the date of execution of this Agreement or (c) the effective date of this Agreement, whichever is later.

Section 3.   For purposes of this Article, an Employee shall be considered in good standing if he remits to the Union periodic dues and initiation fees uniformly required by the Union as a condition of membership, or his dues and initiation fee are checked off by the Employer pursuant to the "*Checkoff*" provision of this Agreement.  The Union shall supply the Employer with dues check-off authorization forms and the Employer shall provide all current and future Employees with said forms and request Employees to sign said forms as allowed by applicable law.

Section 4.   An Employee who has failed to acquire or maintain membership in the Union in good standing shall be discharged within fourteen (14) calendar

1

days following receipt of a written demand from the Union to the Employer requesting his discharge.

Section 5.   When new help is required, the Employer shall immediately notify the Union, and the Union shall have forty-eight (48) hours, (exclusive of an intervening Saturday, Sunday or Holiday) to recommend the help required. If within such forty-eight (48) hours the Union fails to recommend satisfactory person, then, at the expiration of such forty-eight (48) hours, the Employer may seek its help from the open market.

Section 6.   New Employees shall be deemed temporary and employed on a probationary basis for a period of four (4) weeks. Thereafter, they shall be deemed regular Employees.

Section 7.   The Employer shall be required to begin monthly dues remittance for all Employees who have completed their probationary period by the 10th day of any month for which it is due.

Section 8.   The Employer shall not use part-time employment as a way to circumvent the benefits, rights and/or obligations of this contract.

## ARTICLE III - HOURS OF WORK AND OVERTIME

1. A regular week's work shall consist of forty (40) hours, divided into five (5) days of eight (8) hours each, performed between the hours of 12:01 a.m. and 11:59 p.m. from Monday through Sunday of each week. Time and one-half shall be paid for all hours in excess of eight (8) hours per day or forty (40) hours in one week, and one and one-half times their regular rate of pay plus holiday pay shall be paid for work on the paid holidays hereinafter listed. No Employees shall be required to work more than one (1) work shift in a single day, unless the Employee agrees to work a second shift in a single day. Every Employee shall be entitled to two (2) days off each work week.

2. Luncheon recess shall be unpaid and shall be for a period of thirty (30) minutes at the half way point of an Employee's work shift.

3. No regular full-time Employee shall have their regular work hours, as set forth above, below the standard work week in order to effect a corresponding reduction in pay.

4. Hours of work for all full-time Employees shall be consecutive each day except for the luncheon period.

5. No overtime shall be given for disciplinary purposes. The Employer shall not require an Employee to work an excessive amount of overtime. Employees shall not be compelled to work overtime. No Employee shall work overtime unless the Employee volunteers to work overtime.

2

## ARTICLE IV – SEASONAL/TEMPORARY EMPLOYEES

The Employer has the authority to hire for Temporary/Seasonal Employees from April 15th to October 15th each year of this agreement. The Employer shall notify the union of each Temporary/Seasonal Employee hire. Temporary/Seasonal Employees shall only be used to work in areas that are only open during the April 15th to October 15th season. Temporary/Seasonal Employees shall be entitled to participate in the Union Welfare Fund in accordance with Article XIII of this Agreement. Temporary/Seasonal Employees shall be entitled to participate in the Annuity Fund in accordance with Article XIV of this Agreement. The Employer shall not employ Temporary/Seasonal Employees from October 16th through April 14th. Temporary/Seasonal Employees shall be given preference when the Employer is hiring for open full-time and part-time positions.

Temporary/Seasonal Employees shall be subject to the requirements of section 230 to the extent required by the section.

## NO PYRAMIDING

All vacation, holiday, sick day and bereavement pay unless otherwise provided for in this agreement shall be paid at the Employees regular straight time rate of pay. There shall be no pyramiding. Whenever hours worked are compensable at greater than the Employee's regular straight time rate under more than one provision of this Agreement, the hours shall be compensated for at the higher rate, but in no event shall they be compensated for at more than one rate.

## ARTICLE V - HOLIDAYS AND PERSONAL DAYS

The Employer shall allow all Employees the following holidays with pay, regardless of the day of the week on which the holiday falls.

Cleaners. Porters, Doormen and Concierge Employees

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King's Birthday | Columbus Day |
| President's Day | Election Day(National) |
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |
| | Two (2) Personal Days |

Unarmed Security Guards

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King's Birthday | Thanksgiving Day |
| President's Day | Christmas Day |
| Memorial Day | One (1) Personal Day |
| Fourth of July | |

3

Employees required to work on a holiday shall be paid time and one half the Employee's regular rate of pay for the work performed on the holiday plus shall also receive a day's pay for the holiday.

## ARTICLE VI - VACATION

Section 1.    The Employer shall grant all of its Employees, during each year of employment, paid vacation as follows and for part-time Employees prorated paid vacation time:

### Cleaners, Porters, Doormen and Concierge Employees

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
| --- | --- |
| 6 months | 24 hours(3 days) |
| 12 months(1 yr.) | 80 hours(10 days) |
| 60 months(5 yrs.) | 120 hours(15 days) |
| 180 months(15 yrs.) | 160 hours(20 days) |
| 252 months(21 yrs.) | 168 hours(21 days) |
| 264 months(22 yrs.) | 176 hours(22 days) |
| 276 months(23 yrs.) | 184 hours(23 days) |
| 288 months(24 yrs.) | 192 hours(24 days) |
| 300 months(25 yrs.) | 200 hours(25 days) |

### Unarmed Security Guards

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
| --- | --- |
| 6 months | 24 hours(3 days) |
| 12 months(1 yr.) | 40 hours(5 days) |
| 24 months(2 yrs.) | 80 hours(10 days) |
| 60 months(5 yrs.) | 120 hours(15 days) |
| 180 months(15 yrs.) | 120 hours(20 days) |
| 300 months(25 yrs.) | 200 hours(25 days) |

Section 2.    A vacation period shall be defined as a period of time when an Employee takes two or more vacation days consecutively. Vacation money shall be paid immediately before the Employees leave for their vacation. The vacation period shall be designated by the Employee to the Employer at least four weeks prior to the time it commences. Vacations shall be picked in order of seniority. Vacation requests shall not be unreasonably denied. Employees laid off, discharged for cause or quitting prior to the vacation period shall be paid their vacation moneys on a pro-rata basis at the time such employment is terminated. In the event of the death of any Employee covered by this Agreement, vacation moneys due, on a pro-rata basis, shall be paid to the designated beneficiary. Holidays falling during an Employee's vacation period shall not be counted as a vacation day. Employees must take their vacations unless otherwise agreed upon by the

4

Employer, the Employee in the Union. If vacation days remain at the end of the year due to the denial of a vacation request, Employee shall be paid at the end of the year at 100% of an Employee's wages for each accrued unused vacation day.

## ARTICLE VII – WAGE INCREASES

Section 1.    The minimum wage and annual wage increases for all full time and regular part-time Doormen, Concierge, Porters and Unarmed Security Guards shall be as specifically set forth by the Office of the Comptroller, City of New York in the Prevailing Wage Schedule for Class "A" Residential Buildings in accordance with Labor Law § 230 and according to job title classification. Handypersons shall fall under "Handypersons" classification as provided for in the City of New York Prevailing Wage Schedule for Class "A" Residential Buildings. Doorman and Concierge Employees covered by this Agreement shall fall under the "Cleaner / Porter" classification as provided for in the City of New York Prevailing Wage Schedule for Class "A" Residential Buildings. Security Guards covered by this Agreement shall fall under the " Unarmed Security Guard's" classification as provided for in the City of New York Prevailing Wage Schedule for Class "A" Residential Buildings.

Section 2.    The wages for Parking Garage Attendants shall be $15.50 per hour and shall increase with the prevailing wage schedule mirrored to the unarmed security classification without the supplemental benefit rate.

Section 3.    It is agreed that the Employer may require Employees of one classification to do work which may fall within the duties of another classification. Employees shall be paid in accordance with the wage classification for any hours worked in each specific classification.

Cleaners, Porters, Doormen and Concierge Employees

**Effective Period: 7/1/2019 – 6/30/2020**

Wage Rate per Hour:

0-21 months - **$18.68** (75% of the hourly wage rate)
22-42 months – **$21.17** (85% of the hourly wage rate)
Upon completion of 42 months of employment - **$24.90**

Supplemental Benefit Rate per Hour:

0-3 months of employment - **$0.00**

5

4-12 months of employment - **$9.69**
13-24 months of employment - **$12.56**
Upon completion of 24 months of employment - **$12.81**


Unarmed Security Guard

0 – 36 months (Hired on or after 1/1/2016)
    **Effective Period: 7/1/2019 – 6/30/2020**

    Wage Rate per Hour: **$15.50**
    Supplemental Benefit Rate per Hour: **$6.14**

    Supplemental Note: for new employee 0-120 days of employment - $5.59, for new employee 121 days- 2 years of employment - $5.70

Includes employees 31 months or more- hired before 1/1/2016 and over 36 months (Hired on or after 1/1/2016)

    **Effective Period: 7/1/2019 – 6/30/2020**

    Wage Rate per Hour: **$18.00**
    Supplemental Benefit Rate per Hour: **$6.14**

**Rates after 6/30/2020 shall adjust in accordance with Labor Law Article 9 §234(1).**

## ARTICLE VIII – SICK LEAVE

1. For Cleaners, Porters, Doorman and Concierge Employees with less than one (1) year of service with the Employer, the Employer shall comply with the New York City Earned Sick Time Act. Any Cleaners, Porters, Doorman and Concierge Employees with at least one(1) year of service (as defined in Section 4. below) with the Employer, shall receive ten (10) paid sick days for bona fide illness from the Employer in a calendar year.

   Any Employee entitled to sickness benefits shall be allowed five (5) single days of paid sick leave per year taken in single days. The remaining five (5) days of paid sick leave may be paid either for illnesses of more than one (1) day's duration or may be counted as unused sick leave days.

   Unarmed Security Guards with 0-120 days of employment with the Employer shall receive one (1) hour for every thirty (30) hours worked; with 121 days-36 months of employment with the Employer, Employees shall receive five (5) paid sick days; with 36 months or more of employment with the Employer, Employees shall receive six (6) paid sick days.

The Employee shall receive the above sick pay whether or not such illness is covered by the New York State Disability Benefits Law or the New York State Workers Compensation Act; however, there shall be no pyramiding or duplication of Disability benefits and Workers' Compensation benefits with sick pay.

2.  An employee absent from duty due to illness only on a scheduled work day immediately before and/or only on the scheduled work day immediately after a holiday shall not be eligible for sick pay for said absent work day or work days.

3.  Employees who have continued employment to the end of the calendar year and have not used all sickness benefits shall be paid in the succeeding January, one full day's pay for each unused sick day.

4.  For the purpose of this Article, with respect to Cleaners, Porters, Dorman and Concierge Employees, one (1) year's employment shall be reached on the anniversary date of employment.

5.  Employees who complete one(1) year of service after January 1st, shall receive a pro rata share of sickness benefits for the balance of the calendar year.

6.  A regular employee shall be defined as one who is a full-time or part-time employee employed on a regular schedule. Those employed less than forty (40) hours per week on a regular basis shall receive a pro rata portion of sickness benefits provided herein computed on a forty (40) hour work week.

7.  The parties agree that on an annual basis the paid leave benefits provided regular employees under this Agreement are comparable to or better than those provided under New York City Earned Sick Time Act, N.Y.C. Admin. Code § 20 - 911 et seq . Therefore, the provisions of that act are hereby waived.

## ARTICLE IX - JURY DUTY

Employees who are required to serve on a jury shall receive from the Employer, as wages, the difference between their basic weekly wage and that which the Employee received from having served on jury duty for a maximum of two (2) weeks.

## ARTICLE X - DEATH IN FAMILY

An Employee with at least one (1) year of employment shall not be required to work for a maximum of three (3) days immediately following the death of Spouse, Son, Daughter, Father, Mother, Brother or Sister and shall be paid his regular straight time wages for any such three (3) days on which he was regularly scheduled to work, or was entitled to holiday pay.

7

## ARTICLE XII – GUARANTEED WORK

No unit Employee shall receive less than twenty-four (24) hours of work in each week in which he is required to report or eight (8) hours of work on each day on which he is required to report for work. Should any Employees work less than twenty-four (24) hours in any week or less than eight (8) hours in any day, the Employer shall pay said Employees a sum equal to the amount they would have received had they worked the twenty-four (24) hour period or eight (8) hour period. Minimum guaranteed work for Saturdays shall be eight (8) hours. There shall be at least forty-eight (48) hours' notice of lay-off which shall be on the seniority basis hereinafter set forth.

## ARTICLE XIII - LAY-OFF & SENIORITY

Lay-off shall be on the basis of seniority. The Employer shall send to the Union a list of names of the Employees laid-off promptly after the lay-off takes place.

1.  Whenever a reduction in the work force is necessary, the Employer shall give two (2) days' notice of such lay-off to the regular and temporary Employees, excluding the week-end, and said notice may be given no later than the end of the work day on Wednesday.

2.  The Employer will prepare and submit to the Union a seniority list based upon the length of service record for the Employees. Seniority shall prevail, and the principle thereof shall be applied to lay-offs, rehiring and wherever else applicable.

3.  Any Employee who has, or may quit or has been or may be discharged for cause, shall lose all previously accumulated seniority.

4.  In computing the total length of service, time lost as a result of any of the following shall be considered as time served.

## ARTICLE XIV - WELFARE FUND

The Employer will contribute to the I.B.O.T.U. Health & Welfare Fund ("Welfare Fund") for the Blue Elite Plan or any successor plan, in advance for all Full-Time Employees, as defined by the Affordable Care Act on the payroll of the Employer any day of that month, to be used as a Welfare Fund. The Employer agrees to pay the sum of

| Effective Date | Single |
|---|---|
| June 1, 2018 | $680.00 |
| June 1, 2019 | $710.00 |
| June 1, 2020 | $740.00 |
| June 1, 2021 | $770.00 |

8

New Cleaners, Porters, Doormen and Concierge Employees shall be eligible for medical coverage after 120 days of employment and Unarmed Security Guards shall be eligible for medical coverage on the first day of employment. Said medical benefits shall be paid from the supplemental benefits portion of the wages payable to each Employee.

Section 1.   The Employer shall be required to begin contributions for new Employees who have completed their probationary period by the 10th day of any month.

Section 2.   The Employer shall also contribute to the Welfare Fund, or to any successor provider who may be designed by the UNION and the Fund, for a period of up to sixty (60) days, for any Employee who is out on Workers' Compensation, vacation or leave of absence.

Section 3.   The Welfare Fund has been created and maintained pursuant to an Agreement and Declaration of Trust ("Trust"). Said Trust is hereby made a part of this Agreement with the same force and effect as if fully incorporated herein. The Employer and Union hereby agree that upon the execution of this Agreement they shall be deemed parties to the Trust.

Section 4.   Failure of the Employer to make prompt contributions, when due, to the Welfare Fund shall authorize the Welfare Fund to take immediate action, including requesting the UNION to strike, against the Employer. In such event, the UNION shall have the right to strike without recourse to the arbitration procedure, and any other provisions of this collective bargaining agreement.

Section 5.   In the event, the UNION and the Fund decides to discontinue the provisions of hospital/Welfare benefits to eligible bargaining unit Employees and/or their eligible dependents, it shall notify the Employer in writing and thereafter the Employer shall not be required to make any further contributions for such Employees for hospital/medical benefits, until such time as the Union and the Fund shall inform the Employer in writing, of the name of a substitute hospital/medical service provider, to whom the Employer contributions are to be made.

Section 6.   If the Employer is ten (10) or more days delinquent in its obligation to make contributions under this Article, the Union may serve notice of delinquency upon the Employer via certified mail stating that all coverage and benefits for the Employer's Employees under the (I.B.O.T.U. Health and Welfare Fund) will be suspended unless the delinquency is cured within ten (10) days from the date of notice. If the delinquency is not cured within the time set forth in the notice, the Union may direct the I.B.O.T.U. Health and Welfare Fund to suspend benefits and coverage for the Employer's Employees. In the case of a benefit suspension, the Employer is fully liable for equivalent coverage for all of its Employees and in the event of any loss sustained by the Employee of his dependents because of the suspension of benefits and coverage, the Employer shall

9

directly compensate the Employee for any loss. The rights granted under this section are accumulative and do not relieve the Employer of its obligation to make contributions or waive any other rights of the Union or the I.B.O.T.U. Health and Welfare Fund.

Section 7.    The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Welfare Fund.

Section 8.    The Employer further agrees to notify in writing, the I.B.O.T.U. Health & Welfare Fund of all new Employees, covered by this Agreement, employed for a period of thirty-one (31) days or more, and submits payments to the I.B.O.T.U. Health & Welfare Fund, as described herein on their behalf.

Section 9.    The Employer agrees that it shall be incumbent upon him no later than forty-eight (48) hours, to advise the UNION in writing of any change of status of any Employee in his employ, who is covered by the I.B.O.T.U. Health & Welfare Fund. In the event that the Employer fails to notify the UNION and the Fund of any lay-off, discharge or termination, for any reason, of the aforesaid Employee, the Employer shall be liable to the I.B.O.T.U. Health & Welfare Fund for all regular payments until such notice is rendered in writing by the Employer and acknowledged by the UNION.

Section 10.    The Employer is required promptly to notify the Fund in writing of terminations if it fails to do so it shall be liable for any benefits wrongly paid on behalf of terminated Employee as a result of such failure to notify.

Section 11.    When an Employer is two (2) or more months in arrears in contributions into the Welfare Fund, the Employer shall make those contributions, and in addition, the Employer shall deposit a sum equal to six (6) months of contributions (Based on the number of Employees for whom contributions were due in the month preceding the demand for that deposit) into the Welfare Fund Savings Account. The sum shall remain on deposit during the lifetime of this agreement. The interest thereon shall accrue to the Welfare Fund and the principal shall be applied against any further Employer delinquency that might occur during the term of agreement. If any further delinquency does arise during the term of this agreement, the Employer shall be required to satisfy it and keep six (6) months of contributions on deposit of said funds shall be made within ten (10) days after notification by the Welfare Fund.

Section 12.    The contributions amount set forth may not be increased without prior notice of same. In the event the Fund determines that the amount contributed by the Employer is insufficient to adequately maintain the current level of medical benefits that the plan is providing to a participant and their dependents, the Fund shall notify the Employer of the amount of the increase sought. The Employer agrees to contribute the new amount

10

including the increase sought on or after the first day of the month for which it is due after receiving said notice.   The same procedure shall follow for any and all additional increases that the Fund determines are required during the term of the Agreement.  . In the event of a billing error in which the month(s) billed for was incorrect, for that period, the Fund shall forward to the Employer a corrected statement and the Employer will contribute the adjusted amount for that period as per the Collective Bargaining Agreement.

## ARTICLE XV - ANNUITY FUND

Section 1.    It is hereby agreed between the parties that the supplemental benefits payable to Employees, as set forth in the Office of the Comptroller, City of New York Prevailing Wage Schedule for Class "A" Residential Buildings in accordance with Labor Law §230 and according to job title classification, shall first be paid to the Welfare Fund. The Employer will then pay to Local 713 Annuity Fund all excess supplemental benefit monies owed to Employees for a given month; for all Full-Time Cleaners, Porters, Doormen and Concierge Employees after 120 days of employment; and for all Unarmed Security Guards on the first day of employment.

The Employer shall be required to begin contributions into the Annuity Fund for eligible Employees by the 20th day of any month.

Section 2.    The Annuity Fund has been created and maintained pursuant to an Agreement and Declaration of Trust ("Trust").  Said Trust is hereby made a part of this Agreement with the same force and effect as if fully incorporated herein.  The Employer and Union hereby agree that upon the execution of this Agreement they shall be deemed parties to the Trust.

Section 3.    Failure of the Employer to make prompt contributions, when due, to the Annuity Fund shall authorize the Union to take immediate action, including a strike, against the Employer, without recourse to the arbitration procedure, and notwithstanding any other provisions of this Agreement.

Section 4.    When an Employer is two (2) months or more in arrears in contributions into the Annuity Fund, the Employer shall make those contributions and, in addition, the Employer shall deposit a sum equal to six (6) months of contributions (based upon the number of Employees for who contributions were due in the month preceding the demand for that deposit) into an Annuity Fund savings account.  That sum shall remain on deposit during the lifetime of this Agreement.  The interest thereon shall accrue to the Annuity Fund and the principal shall be applied against any further Employer delinquency that might occur during the term of this Agreement.  If any further delinquency does arise, during this Agreement, the Employer shall be required to satisfy it and keep six (6) months of

11

contributions on deposit. The deposit of said funds shall be made within ten (10) days after notification by the Annuity Fund.

Section 5.    The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Annuity Fund.

Section 6.    The Union shall have the right to audit the Employer, and shall have full access to all books and records necessary, to ensure accurate and timely payment of contributions under this Article.

## ARTICLE XVI - DISCHARGE/SUSPENSION

Section 1.    The Company shall not discharge nor suspend any Employee without just cause, and the written notice of discharge or suspension must set forth the specific reason (s) for such action.

Section 2.    Prior to suspension or discharge, the Employer shall give at least two (2) warning notices of the specific complaint against the affected Employee in writing and copies to the Union and Shop Steward, except that no warning notice need be given any Employee before he is discharged or suspended for any of the causes listed under Causes for Immediate Discharge.

Section 3.    Causes for Immediate Discharge: The causes for immediate discharge of an Employee shall be for the theft of money, goods, or merchandise of the Employer or another Employee during working hours, theft of time, use of narcotics, drunkenness, insubordination, possession of any type of weapon, assault on Employer or his representative or another Employee during working hours, calling an unauthorized strike or walkout, or proven recklessness resulting in a serious accident while on duty.

Section 4.    Except for the discharge of an Employee for a reason set forth in Section 3 of this Article, or where in the Union's sole judgment it is in the best interest of those concerned that the cause for discharge be submitted to arbitration and the Employee shall not be continued in employment pending the arbitration award.

## ARTICLE XVII - ARBITRATION

Section 1.    All complaints, disputes and grievances arising between the parties to this agreement, involving questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation hereto directly or indirectly - shall be presented by the parties asserting a grievance to the other party the grievance shall be reduced to writing by the aggrieved party in a timely manner. Both parties shall thereupon attempt to adjust

12

the dispute, and if no adjustment can be arrived at within forty-eight (48) hours, the matter shall be submitted for arbitration to a mutually agreed upon independent arbitrator. If one is unavailable, then the New York State Board of Mediation, one of whose staff members shall arbitrate same, upon request of either party or a mutually agreed upon Arbitrator, picked from that panel.

Section 2.    Where a dispute is submitted for arbitration as set forth herein, such action shall be considered a final and binding submission to arbitration by both parties hereto. Thereafter, should either of the parties fail to attend the hearing set forth by the Arbitrator after due notice thereof, the Arbitrator shall be empowered to proceed with such hearings in the absence of the said party, and shall be empowered to make a final decision and award. The decision of the Arbitrator shall be made in writing and shall be final and binding upon both parties. As long as the Employer is not in default in complying with the decision of the Arbitrator, the Union shall not engage in any strike, picketing, boycott or walkout. As long as the Union is not in default in complying with the decision of the Arbitrator, the Employer shall not engage in any lockout. Cost of the arbitration shall be borne equally by both parties.

## ARTICLE XVIII - SHOP CHAIRMAN AND COMMITTEE

The Union shall have the right to establish a Shop Committee and Shop Chairman in the facility covered by this Agreement. Such Chairman shall have the right to take up with a representative of the Employer all grievances arising out of this Agreement. Such Chairman must be in the facility at any time when Employees are working; the Shop Chairman and Shop Committee, consisting of not more than __ Employees, shall have super seniority.

## ARTICLE XIX - CONTRACTING OF WORK

All work which can be done at the Employer's facility will be done there and not contracted out or performed at some other establishment. Any work which has heretofore been contracted out or purchased elsewhere may continue to be so contracted or purchased.

## ARTICLE XX - DISCRIMINATION

Section 1.    Neither the Employer nor the Union will discriminate against or in favor of any Employee or applicant for employment because of race, color; creed, national origin, citizenship status, sex, age, disability or marital status, except as may be permitted by law.

Section 2.    Nothing in this Agreement shall prevent the Employer from taking any action necessary to comply with the Americans with Disabilities Act. Reasonable accommodations made by the Employer for a particular

13

Employee shall be a non-precedential nature and shall not be evidence of disparate treatment in any grievance or arbitration.

## ARTICLE XXI - MODIFICATION OF AGREEMENT

Neither the Employer nor any Employee has the right to modify or waive any of the provisions of this Agreement. The Employer will not enter into any individual agreements or arrangements with any of its Employees covered by this agreement.

## ARTICLE XXII - LEAVE OF ABSENCE

Section 1.   Any Employee desiring a leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for six (6) months and may be extended for like periods. Written permission for extension must be secured from both the Union and the Employer. During the period of absence, the Employee shall not engage in gainful employment in the same industry in classifications covered by this Agreement. Failure to comply with this provision shall result in the complete loss of seniority rights for the Employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights.

Section 2.   a.   An Employee who is a candidate for Union election shall be granted a two (2) weeks leave of absence.

b.   Any Employee who is designated by the Union to work for the Union on a full time basis shall be granted a leave of absence, with no loss of seniority, for the duration of his full time employment provided he reports back to work to the Employer within ninety (90) days after his employment with the Union is terminated.

## ARTICLE XXIII - FAMILY AND MEDICAL LEAVES

Employees shall be entitled to Family Medical Leave in accordance with applicable law.

## ARTICLE XXIV - MILITARY LEAVE

All military leaves shall be as provided by the Military Act or other legislation governing same, except that in any event, Employees shall be restored to their

former positions at the prevailing rate of pay, on the basis of seniority, the time spent in military service considered as time actually employed by the Employer. Reinstatement, however, must be applied for within ninety (90) days after receiving an honorable discharge and the applicant must be physically able to do the work.

## ARTICLE XXV – REPORTING PAY

If an Employee reporting for the usual day's work shift is, for any reason other than discipline, prevented from working, or is laid off, without previous notice not later than the end of that Employee's shift on the previous work day, the Employee shall receive his or her pay for four (4) hours.

## ARTICLE XXVI - VISITATION

It is agreed by the Employer that the Union Representation shall have access to the Employer's facility during working hours, to ascertain whether the agreement is being properly observed, providing there is a minimum interruption of the normal course of the operation in the facility.

## ARTICLE XXVII - REDUCTION OF WAGE RATES OR BENEFITS

Nothing in any provisions of this agreement shall be so construed, anything to the contrary notwithstanding, as to affect a reduction in the entitled wage rate of any worker, any entitled conditions and/or benefits formerly or presently received prior to the execution of this CBA or to increase the number of hours per week which the worker shall be compelled to work in order to earn his present weekly wage.

## ARTICLE XXVIII - CHECK-OFF

The Employer agrees that he will deduct from the wages of Employees, once a month, out of the first salary payable in each month, the amount of dues, initiation fees and regularly authorized assessments the Employees are required to pay the Union for the month.

The said deduction shall be made on the first day of each and every month. All monies, so deducted, shall be remitted to the Union, together with a list of the Employees whose dues and initiation fees have been deducted, by the tenth (10th) day and no later than the fifteenth (15th) day of the current month.

Once a month, within one week from the date of such deduction, the Employer will deliver the money billed and deducted to a duly authorized representative designated by the Union for the purpose. The Union agrees that it will file with the Employer written authorization executed by each Employee authorizing such deductions. In the event the Employer is delinquent in making such payments he shall suffer the same penalties for non-payment as are provided in Article XV and XIX.

15

## ARTICLE XXIX - BULLETIN BOARDS

The Employer agrees to post and allow the Union the use of a sufficient number of bulletin boards in the shop to be used for Union notices.

## ARTICLE XXX - SAFETY PROVISIONS & PAY FOR TIME LOST

The Employer will make reasonable provisions for the safety and health of its Employees, and shall comply with all Federal, State and Municipal requirements for safeguards and cleanliness. Should an Employee be injured at the workplace he shall be paid for his entire day. Should he lose time during the day thereafter for treatment for injuries suffered while employed, he shall be paid for time lost.

## ARTICLE XXXI - TOOLS

The Employer also agrees to furnish tools and equipment required for any work to be performed.

## ARTICLE XXXII - DRESS CODE AND HANDBOOK

1.  The Employer agrees that where it requires its employees to wear uniforms, and follow buildings' dress code, it may be necessary from time to time to supply unifom1s without any charge or costs to employees. The Employer shall provide all employees required to wear uniforms with three (3) sets of uniforms upon the effective date of this Agreement.

2.  The Employer shall have the right to create a handbook with reasonable work rules for all employees covered by this Agreement. Should an employee violate a work rule provided for in the handbook, the Employer shall not have the right to summarily discharge an employee for such violation. The Employer shall utilize progressive discipline to correct any violation of a work rule provided for in the handbook. Continued violations of a work rule may constitute just cause for termination.

## ARTICLE XXXIII - WORK STOPPAGE

Where an unauthorized work stoppage or strike occurs, the Union will make immediate efforts to get the Employees to return to their respective jobs and shall request the Employees to cease any action which may affect production. The Employer agrees, in consideration of the performance by the Union of the aforesaid undertakings, to absolve the Union, its officers, agents or members from liability by suit for damages for breach of contract of any kind or character whatsoever. It is distinctly agreed and understood that the Union shall not be held liable for any unauthorized or outlaw strikes, or the individual acts or actions of any Employee or Employees.

16

## ARTICLE XXXIV - SEPARABILITY AND SAVINGS CLAUSE

Should any part of this agreement or any portion therein contained be rendered or declared illegal, legally invalid or unenforceable by a court of competent jurisdiction, or by the decision of any authorized governmental agency, such invalidation of such part or portion of this agreement shall not invalidate the remaining portions thereof. In the event of such occurrence, the parties agree to meet immediately, and if possible, to negotiate substitute provisions for such parts or portions rendered or declared illegal or invalid. Should the parties be unable to agree on substitute provisions, the matter shall be referred to arbitration as herein able provided. The remaining parts and provisions of this agreement shall remain in full force and effect.

## ARTICLE XXXV - PICKET LINES

It shall not be a violation of this agreement nor grounds for discipline discharge or replacement for Employees covered hereunder to refuse to cross a picket line authorized by a Labor Union.

## ARTICLE XXXVI - EXAMINATION OF RECORDS

The Union shall have the right during reasonable business hours to examine the payroll and records of the Employer to determine the wages and hours worked of Employees.

## ARTICLE XXXVII - SUCCESSORS AND ASSIGNS

Section 1.     This agreement shall be binding upon the parties hereto, their successors, administrators, executors, and assigns and shall survive a change of name, of location or place of business or re-organization. In the event the entire operation or any part thereof is sold, leased, transferred or taken over by the sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this agreement for the life thereof.

It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this agreement. The Employer shall give notice to the existence of this agreement to any purchaser, transferee, assignee or lessee of the operation of this agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than thirty (30) days prior to sale.

Section 2.     The Employer shall not have the right to assign this agreement or in any other manner to transfer the rights and obligations thereof to any other party, unless and until the purchaser, transferee, assignee or lessee shall first have assumed and accepted, in

17

writing, all the terms and conditions of this agreement. Employees working under this agreement shall at all times be entitled, acting through the Union as their representative, to hold the Employer directly responsible for the full performance of all terms and conditions of this agreement.

## ARTICLE XXXVIII - NEUTRALITY CLAUSE

1. The parties mutually recognize that national labor law guarantees Employees the right to form or select any labor organization to act as their exclusive bargaining representative for the purpose of collective bargaining with their Employer, or to refrain from such activity.

2. The Employer will take an approach of strict neutrality with regard to unionization of the Employees and will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

3.      The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

4. Whenever during the term of this Agreement the Employer finds it necessary to hire new Employees for vacancies in job classifications covered by this Agreement at its facility, the Employer shall notify the Union to request applicants for such vacancies. When requesting applicants, the Employer, upon request, will state the qualification applicants are expected to possess. The Union may furnish applicants for the job vacancies specified by the Employer. The Union's selection of applicants for referral shall be on a non-discriminatory basis and shall not be based upon or in any way affected by membership in the Union or the Union's bylaws, rules, regulations, constitutional provision, or any other aspects or obligations of Union membership policies or requirements, or upon personal characteristics of an applicant where discrimination based upon such characteristics is prohibited by law. The Employer agrees that any interest demonstrated by an applicant in joining the Union shall not constitute grounds for discriminatory or disparate treatment nor adversely impact the applicant's ability to be hired by the Employer. The Employer shall be the sole judge of an applicant's suitability, competence and qualification to perform the work of any job filled.

5. The Union may provide the Employer with written notice of its intent to organize Employees covered by this Agreement. If such notice is served, the Employer shall then provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in the Employer locker rooms and public areas of the facility during Employees' non-working times (before work, after work, and during meals and breaks) and/or during other periods and locations as the parties may mutually agree upon.

6. Within ten (10) days following the Employer's receipt of written notice of intent to organize Employees pursuant to Paragraph 5, the Employer will furnish the Union with a complete list of such Employees, including both regular full-time and regular part-time Employees, showing their job classification and departments. Within two (2) weeks thereafter, the Employer will furnish a second list of such Employees to the Union, which includes the home addresses. Thereafter, on a monthly basis, the Employer will provide to the Union updated lists which include the Employees' full name, department, address and classification. Provided further that in either case no Employees' home address will be provided to the Union under this paragraph, if such Employee has objected in writing, without Employer solicitation or advice, to giving such information to the Union.

7. The Union may request recognition, as the exclusive collective bargaining agent for the Employees set forth in the unit. An Arbitrator, or another person mutually agreed upon by the Employer and the Union, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of Employees. If that review establishes that a majority of Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Employer will recognize the Union as such representative of such Employees. The Employer will not file, or cause to be filed, a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided in this Agreement.

8. The Employees subject to the card check procedure established by this Agreement, those whose cards count for the purposes of determining the Union's majority status, shall consist of all regular full-time and regular part-time Employees in the classifications described.

9. If the Union is recognized as the sole exclusive collective bargaining representatives as provided in paragraph 7, negotiations for a collective bargaining agreement will be commenced immediately. The Employer agrees to bargain in good faith in an effort to reach an agreement with the Union.

## ARTICLE XXXIX - ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

A. The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as

19

described below shall be submitted to final and binding arbitration before Roger Maher. The Arbitrator shall apply appropriate law and may, but shall not be required to, award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

B.  Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Roger Maher as Mediator for such disputes. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

C.  No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within thirty (30) calendar days following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

D.  In the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the Employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation and/or arbitration. Such claims may be presented by and on behalf of the individual Employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class

20

basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the Employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Mediator/Arbitrator may, but shall not be obligated to, direct the Employer to pay the fees and expenses of the Arbitrator.

E. The parties agree not to contest court confirmation of an arbitration award rendered under this Article. Nothing herein shall require the Union or the Employer to indemnify the other party with respect to any finding by an arbitrator and/or court of competent jurisdiction that the Employer has violated any of the Covered Statutes.

All payroll and time records exchanged by the parties (i.e. Union, Employer or individual Employee) in mediation shall be deemed admissible in arbitration. All other information exchanged in mediation shall be deemed offered as part of a settlement negotiation and, pursuant to the Federal and New York State Rules of Evidence, shall not be admissible in any subsequent proceeding.

## ARTICLE XL - EXPIRATION OF AGREEMENT

This agreement shall expire at 12:01 a.m. on the 31th day of December, 2021. It shall be automatically renewed from year to year thereafter, unless modified or terminated by either party giving to the other party not less than sixty (60) days written notice, by registered mail, prior to the next termination date, of its desire to modify or terminate this agreement. Should said sixty (60) days' notice be given, joint conferences between the parties shall commence at least thirty (30) days before the termination date, for negotiation purposes.

## ARTICLE XLI - TERM OF AGREEMENT

This agreement shall be a Three (3) year agreement and shall go into force and effect on January 1, 2019. Should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against the drafter of the letter Agreement in connection with said dispute. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument, and in pleading or proving any provision of this Agreement, it shall not be necessary to produce more than one (1) of each counterpart. Any party to this Agreement may introduce or enter into evidence facsimile transmission(s) or copy(ies) thereof of the Agreement in any legal proceeding in connection with this Agreement and said facsimile transmission(s) and copy(ies) will have the full force and effect as if an original executed Agreement had been introduced at said proceeding or entered into evidence.

21

IN WITNESS WHEREOF, the parties hereto have caused these presents to be

executed by duly authorized officers and have hereunto set their hands and

seals the day and year first above written.

GROUND SUPPORT SERVICES                    LOCAL 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO

BY:_____             BY:_____
                                              Robert Vella